**UNITED STATES** of America ex rel. George Robert BROWN, Petitioner-Appellee,

v.

Ward LANE, as Warden of the Indiana State Prison, Respondent-Appellant.

No. 13583.

United States Court of Appeals Seventh Circuit.

May 4, 1962.

William D. Ruckelshaus, Asst. Atty Gen., of Indiana, Edwin K. Steers, Atty. Gen., of Indiana, Indianapolis, Ind., for appellant.

Nathan Levy, South Bend, Ind., for appellee.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

The matter before us is based upon a petition for a writ of habeas corpus filed by George Robert Brown, petitioner, who is under sentence of death imposed by the Lake County (Indiana) Criminal Court upon a conviction of murder in the perpetration of robbery. The District Court granted the petition and issued the writ.

After petitioner was convicted in the State court, he filed a motion for a new trial which was denied. He perfected a timely appeal to the Indiana Supreme Court and the judgment of the lower court was affirmed. A petition for a writ of certiorari was denied by the United States Supreme Court.

In February 1960, petitioner sought a writ of habeas corpus in the United States District Court for the Northern District of Indiana. It was dismissed for failure to exhaust state remedies. Petitioner then sought a writ of error *coram nobis* in the State court where he had been convicted. The Indiana Public Defender appeared in behalf of petitioner in this proceeding. After a hearing, the writ was denied.

Petitioner sought an appeal from this denial. He asked the support and help of the Public Defender who declined. He filed a motion in the Lake County Criminal Court to appoint counsel for him and

to furnish the transcript of record. This motion was denied. Petitioner thereupon filed a verified petition for a writ of mandate in the Indiana Supreme Court asking that Court to direct the Lake County Criminal Court to appoint counsel and to furnish him a transcript. This petition was denied by the Indiana Supreme Court in February 1961. Petitioner then filed a petition for a writ of certiorari in the United States Supreme Court in March 1961. This petition was denied in June 1961, but without prejudice to his application for a writ of habeas corpus in the appropriate United States District Court. Whereupon petitioner filed a petition for a writ of habeas corpus in the United States District Court in July 1961 and it is from the order granting the writ that the instant appeal originates.

A hearing was held before the District Court on July 26, 1961. Thereafter the District Court handed down a written opinion [1] holding that petitioner had been denied equal protection of the laws by the State of Indiana, and ordered a full appellate review of petitioner's *coram nobis* denial by the State of Indiana within ninety days of the date of that Court's order. No action was taken within that period by the State of Indiana, and on November 10, 1961, the District Court ordered respondent to show cause why petitioner should not be released, at a hearing to be held November 16, 1961. After a hearing on that date, the District Court issued its order granting petitioner's writ of habeas corpus, but remanding petitioner to the custody of respondent Warden, pending this appeal.

The Public Defender stated his reasons for refusing to represent petitioner in perfecting an appeal to the Indiana Supreme Court from the order of the trial court overruling and denying his *coram nobis* petition. He said, in a letter:

"After a careful review of your hearing had on June 1 on your petition for Writ of Error Coram Nobis in the Criminal Court of Lake County, will advise that I am unable to find any error or errors that would have any merit to assign upon an appeal; therefore, I am hereby informing you that my office will not appeal the judgment denying your Petition for Writ of Error Coram Nobis.

"I have talked to the Chief Deputy Attorney General and he informed me that in the event my office refuses to perfect an appeal for you and if you are a pauper, and allege these facts in any petition you file in the Federal Court, the Attorney General will concede that you have exhausted your state remedies. I have no authority to appear for you in the Federal Court but I believe the Federal Judge might appoint counsel for you.

"Due to the above facts, I am closing my file on your case."

█ The Indiana Public Defender statute is found in Burns Indiana Statute (1956 Repl.) Section 13–1401 to 13–1406 and reads in part as follows:

13–1401:

"There is hereby created the office of Public Defender. The public defender shall be appointed by the Supreme Court of the state of Indiana to serve at the pleasure of said court, for a term of four [4] years. * * "

13–1402:

"It shall be the duty of the public defender to represent any person in any penal institution of this state who is without sufficient property or funds to employ his own counsel, in any matter in which such person may assert he is unlawfully or illegally imprisoned, after his time for appeal shall have expired."

13–1405:

"The public defender may order on behalf of any prisoner he represents a transcript of any court proceeding, including evidence presented, had against any prisoner, and depositions, if necessary, at the ex-

1. Printed in 196 F.Supp. 484.

pense of the state, but the public defender shall have authority to stipulate facts contained in the record of any court, or the substance of testimony presented or evidence heard involving any issue to be presented on behalf of any prisoner, without the same being fully transcribed."

It is clear from the decisions of the Indiana Supreme Court that where an indigent desires to take an appeal from an adverse decision in a post-conviction remedy such as *coram nobis*, he must first obtain the assistance of the Public Defender. A prisoner is not entitled to a transcript of the record at public expense, unless he obtained same through the Public Defender. State ex rel. Casey v. Murray, 231 Ind. 74, 106 N.E.2d 911. Also, the Public Defender is given wide discretion in deciding whether the matters complained of present any appealable issue. Jackson v. Reeves, 238 Ind. 708, 153 N.E.2d 604.

The effect of the statute as interpreted by the Indiana Supreme Court is that a defendant who can afford to pay for a transcript can perfect an appeal, but an indigent defendant, in order to perfect an appeal, must first secure the aid of the Public Defender, and if the latter declines, a transcript will be denied. This results in an indigent defendant being denied appellate review because Indiana Supreme Court Rule 2–40 [2] requires that a "transcript of so much of the record as is necessary to present all questions raised by appellant's propositions shall be filed with the clerk of the Supreme Court * * *." The Supreme Court of Indiana has ruled that the presence of a transcript is jurisdictional to it. McCrary v. State (Ind.1961), 173 N.E.2d 300, 305–307.

■ The petitioner herein was prevented from obtaining an effective appellate review merely and solely because he was an indigent defendant who was unable to purchase a transcript of the record. Without such transcript the Supreme Court of Indiana would not assume jurisdiction.

In Griffin et al. v. Illinois (1956), 351 U.S. 12, p. 13, 76 S.Ct. 585, p. 588, 100 L.Ed. 891 the Supreme Court stated the issue therein as follows: "The question presented here is whether Illinois may, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, administer this statute so as to deny adequate appellate review to the poor while granting such review to all others."

In Griffin, the Supreme Court further stated (p. 18, 76 S.Ct. p. 590): "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. * * * But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty." The Court said further (p. 19, 76 S.Ct. p. 591): "Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

The rule announced in Griffin was reaffirmed in Eskridge v. Washington State Board of Prison Terms and Paroles (1958), 357 U.S. 214, 78 S.Ct. 1061, 2 L. Ed.2d 1269. The Eskridge case is similar in many respects to the case at bar. The Constitution of the State of Washington gave the accused in a criminal prosecution a right to appeal in all cases. A Washington State law authorized the furnishing of a transcript to an indigent defendant at public expense if, in the opinion of the trial judge "justice will thereby be promoted." The trial judge in Eskridge found that justice would not be promoted and a transcript was not furnished. The United States Supreme Court stated (p. 216, 78 S.Ct. p. 1062): "We do not hold that a State must furnish a transcript in every case involving an indigent defendant. But here, as in the Griffin case, we do hold that, '[d]estitute defendants must be afforded as adequate appel-

---

2. Ind.Sup.Ct.1958 Ed., Rule 2–40.

late review as defendants who have money enough to buy transcripts.' "

It is true that in each of the Griffin and Eskridge cases, a direct appeal from a conviction was involved. However, from the language used by the Supreme Court we cannot conceive that a different yardstick would be applied on an application for a writ of error *coram nobis,* an Indiana post-conviction right.

In Smith v. Bennett (1961), 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39, the Supreme Court held that an Iowa statute which required an indigent prisoner of the State to pay a filing fee before a writ of habeas corpus would be docketed, denied the prisoner the equal protection of the laws in violation of the Fourteenth Amendment. The Court said (p. 709, 81 S.Ct. p. 896): "We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."

We think the Supreme Court in Smith v. Bennett effectively disposed of the contention that the rule stated in Griffin and Eskridge is not applicable to the case at bar because a direct appeal from a criminal conviction is not involved. The Court said (p. 712, 81 S.Ct. p. 897): " * * * In Iowa, the writ is a post-conviction remedy available to all prisoners who have $4. We shall not quibble as to whether in this context it be called a civil or criminal action * * *. The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels."

We hold the District Court was correct in determining the State of Indiana denied petitioner the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The Court acted within its discretion in requiring a full appellate review of petitioner's *coram nobis* denial within a period of ninety days. The State of Indiana chose to ignore this order. The District Court was left with no alternative but to order petitioner's

discharge from custody, but under the circumstances, properly ordered that he be detained in the custody of the warden pending the appeal to this Court.

We direct that petitioner continue to be detained in the custody of the warden during that period during which a petition for certiorari may properly be filed with the Supreme Court of the United States to review the decision of this Court, and if such a petition be granted, then for such period of time until the United States Supreme Court has made final disposition of this case. An order for a stay of execution for the same period will be entered. Thereafter, the United States District Court may enter an order of final disposition.

We wish to acknowledge the services in this Court of Nathan Levy, Esquire, of South Bend, Indiana. His services were painstaking and his brief very helpful.

Affirmed.