POWELL *v*. STATE OF INDIANA.

[No. 1267S140. Filed June 2, 1970. No petition for rehearing filed.]

*Don R. Money,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with the crime of first degree murder; said indictment in pertinent part reads as follows, to-wit:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that WILLIE LEE POWELL on or about the 9th day of October, 1966, at and in the County of Marion and in the State of Indiana did then and their unlawfully, feloniously, purposely and with premeditated malice kill and murder ELIZAH REDMON, a human being, by then and there unlawfully, feloniously,

purposely and with premeditated malice shooting at and against the body of the said ELIZAH REDMON with a gun loaded with gunpowder and metal bullets, then and there held in the hand of the said WILLIE LEE POWELL, and did then and there and thereby inflict mortal wounds in and upon the body of said ELIZAH REDMON, of which wounds the said ELIZAH REDMON then and there sickened and languished and of which mortal wounds on the 10th day of October, 1966, at and in the County and State aforesaid, the said ELIZAH REDMON did then and there and thereby die; and so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said WILLIE LEE POWELL, in the manner and form and by the means aforesaid, unlawfully, feloniously, purposely and with premeditated malice did kill and murder the said ELIZAH REDMON, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Trial by jury was had, beginning August 21, 1967. On August 22, 1967, the jury returned its verdict finding appellant "guilty of Murder in the First Degree as charged in the indictment * * *." The court thereupon ordered a presentence investigation made, the same being set for consideration on September 1, 1967. Judgment was rendered on the verdict September 1, 1967; the court, on the verdict of the jury, found appellant "* * * guilty of First Degree Murder * * *" and sentenced him to the Indiana State Prison during life.

A motion for new trial was filed by appellant September 21, 1967, said motion reading in pertinent part as follows:

"Comes now the defendant in the above case and moves the court for a new trial for the following reasons:

1. That the verdict was based on surprise which ordinary prudence could not have guarded against.

2. Error of law occurring at the trial.

3. The verdict of the jury is contrary to law, and the verdict of the jury is not sustained by sufficient evidence."

Appellant's motion for new trial was overruled September 28, 1967. Appellant's sole Assignment of Error is:

"1. That the Court erred in overruling the Appellant's Motion For A New Trial."

From the evidence adduced at trial it appears that on the evening in question the decedent visited appellant's apartment for the purpose of obtaining assistance in getting his car started. Appellant and decedent had an argument and appellant ordered Redmon out of his apartment. Redmon left, but returned shortly thereafter. The evidence with respect to what actually happened upon decedent's return to the apartment is in conflict. Mr. Byrl Swanigan, who was present in appellant's apartment during each of Redmon's appearances, gave a statement to detective-sergeant, James Gates, after being duly advised of his constitutional rights, shortly after Gates' arrival at the scene of the crime. The substance of said statement was related to the court by Sergeant Gates. Swanigan stated that appellant and Redmon again argued upon the latter's return, and then appellant went into the kitchen and withdrew a pistol from a drawer. Redmon turned and started to walk out of the apartment when appellant fired a shot at him. While Redmon was turning around in the doorway to come back in appellant fired a second shot this time striking and fatally wounding Redmon in the head.

Appellant contends that when he ordered Redmon to leave the second time he (Redmon) did not do so, but began swearing and threatening appellant. While standing in the doorway to the apartment, approximately fifteen feet from appellant, Redmon put his hand in his pocket as if to secure a knife or other weapon. Appellant pulled a pistol out of a nearby drawer and fired one shot into the floor in front of Redmon. He then "pulled up" to shoot again when Redmon allegedly "broke" toward him. Appellant, fearing bodily harm, fired again this time striking Redmon in the head.

On appeal, appellant raises two distinct arguments in support of his contention that his conviction below should be reversed. He argues that the evidence introduced before the trial court was wholly insufficient to sustain his conviction in that the record fails to disclose that this killing was done with a purpose and fails to disclose any

malice. The rule is well settled in Indiana that a conviction will be sustained if there is any evidence of probative value of the facts essential to support the judgment. *Mathews* v. *State* (1967), 248 Ind. 563, 228 N. E. 2d 1; *Majko* v. *State* (1965), 246 Ind. 506, 207 N. E. 2d 212. When the question of the sufficiency of the evidence is raised, this Court will consider only that evidence most favorable to the State, together with all the reasonable inferences to be drawn therefrom, to determine whether the jury was warranted in returning a verdict of guilty. *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471. Also, on appeal, this Court will not weigh the evidence nor will it determine the credibility of the witnesses. *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

The uncontradicted evidence shows that appellant killed the decedent with a shot to decedent's head from appellant's pistol. Whether by "purpose," appellant means motive or intent, the result is the same. Motive *per se* is not material to the commission of a crime, and the State is not bound to prove motive. *Kallas* v. *State* (1948), 227 Ind. 103, 83 N. E. 2d 769, cert. den. 336 U. S. 940, 93 L. Ed. 1098, 69 S. Ct. 744. In *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462, this Court stated that:

> "It was unnecessary to establish a motive for the killing, where the criminal act causing death was otherwise fully established."

If, by "purpose," appellant means intent, intent to kill may be inferred from the use of a deadly weapon in a manner calculated to produce death. *Butler* v. *State, supra; Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108; *Schlegel v. State* (1958), 238 Ind. 374, 150 N. E. 2d 563. Likewise, malice may be inferred from the intentional use of a deadly weapon in a manner calculated to produce death. *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465; *Sparks* v. *State* (1964), 245 Ind. 245, 195 N. E. 2d 469,

rehearing granted on other grounds, 245 Ind. 250, 196 N. E. 748.

Appellant's second argument, that the evidence establishes justifiable self-defense, as a matter of law, is completely without merit. The evidence is completely devoid of any indication that decedent was carrying a weapon at the time of the shooting, or that he had ever carried a weapon. Neither the victim, appellant, nor appellant's apartment showed any physical signs that there had been a scuffle prior to the shooting. The evidence would seem to indicate that at no time was the victim closer than ten feet to appellant. There was absolutely no evidence that the decedent had a bad reputation for peace and quiet in the community, and the only evidence that he ever threatened appellant was testimony by appellant himself that while decedent was standing in the doorway to appellant's apartment with his hand in his pocket, he "broke" toward appellant. An examination of the apartment failed to disclose a bullet hole in the floor forward of where Redmon was standing. Also, the evidence is uncontradicted that the bullet which killed decedent entered from the left side of the front of the brain and exited through the right side of decedent's head, thus substantiating the version of the incident as related to Sergeant Gates by Swanigan. Appellant's attempt to justify the killing is at best a rationalization after the fact.

In *Bange* v. *State* (1958), 237 Ind. 422, 146 N. E. 2d 811, this Court cited with approval the rule governing the definition of self-defense in Indiana as stated in *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547, where this Court held:

"In this state, the law of self-defense, as deduced from modern authorities, is, 'that when a person, being without fault, and in a place where he has a right to be, is *violently assaulted,* he may, without retreating, repel force by force, and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable." (Emphasis added)

The record is absolutely silent as to any assault on appellant, much less a violent assault. Nor is there any evidence to indicate the use or threat of force on appellant, much less the necessity to repel force.

For the reasons hereinbefore mentioned, the judgment of the Marion Criminal Court, Division Two, is hereby affirmed.

Hunter, C.J., Arterburn, DeBruler and Givan, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 633.